May it please the Court, my name is Howard Davis. I'm representing the petitioner, Ms. Ventes Memoriam, and I just wanted to thank everyone for accommodating me. And I'd like to reserve about two minutes rebuttal time. I have a number of issues I wanted to address, including the 28J letter, and also one of the issues of involving the scope of Acheinian, which has to do with the sua sponte issues. So I guess first, with regard to the issues raised in the 28J letter, and the whole issue of prejudice, well, first of all, the Board of Immigration Appeals did find that the petitioner met LOSADA, which under LOSADA, there is a prejudice requirement. And in addition, before the Board of Immigration Appeals, the government did not even file an opposition to the motion to reopen. So I'd have to say it weighed that issue, or their failure to exhaust administrative remedies. But the prejudice that, which I, which the motion to reopen discussed, was basically that noted by the court in Deringer, in which the person's right to the whole appellate procedure was completely undermined, the appellate procedure in this case being the to take an appeal as of right to the Ninth Circuit Court of Appeal. And that was basically that the integrity of the proceedings was undermined. And that was the prejudice that was discussed, and which the Board did not appear to have any problems with. And am I right in hearing you that in front of the Board, the INS made no response to your motion to reopen? Correct. And so there's a presumption of prejudice. There was no attempt to rebut that presumption. Correct. And that's the discussion in Rojas Garcia, as well as in Singh v. Ashcroft, that there's a rebuttable presumption, but nobody came in to rebut the presumption. So the burden of production, which should have shifted, well, it wasn't fulfilled. The, another thing is, is that the fact of the matter is, is that at the very least, the matter should be remanded because the Board didn't even address other arguments raised by the Petitioner in the motion to reopen. I mean, one was to, yes, do a motion to reopen for adjustment of status, but there was also another request, which as an alternative, a motion to reopen to vacate the Court's decision and reissue with a new 30-day period in which to file a petition for review and 90 days for motion. Was there ever any attempt, though, to suggest a basis for attacking the finding that the Petitioner wasn't credible? One of the problems is, is that the Petitioner's counsel before the Board of Immigration Appeals originally didn't even submit anything. And that was part of the whole discussion there. Although the Board did make a finding in its original, I think it's from 2002, its original decision finding that in looking at the record that they upheld the judge. But the fact of the matter is, is that the Respondent's, or the Petitioner's counsel at that time didn't even submit a brief on appeal. So the Board, in affirming the credibility determination of the immigration judge, did not have the benefit of any argument from the Petitioner? At that time, because the, because his counsel didn't even submit anything. So they just accepted the IJ's findings and adopted them? That's what appears. And I guess I'm trying to understand, and this is all pretty new to me, but doesn't Singh require some showing that there is a plausible basis for relief? In other words, you'd have to, not convince anybody you could prevail on the merits, but at least that you'd have a reasonable chance of attacking the, or succeeding in an attack on the IJ's credibility finding? Well, if, under Singh, which, and which discusses Diringer. First, there was the initial discussion that in Diringer, the court found that there was a prejudice that was presumed because of the misconduct of the attorney. Then, but the presumption could be rebutted, but that would mean if there's a presumption, and there's, and it could be rebutted, that means that the burden of production would have to shift to the person saying, no, there's no prejudice. And so none of that was even raised such that it could even be, so they could even be briefed. Not before the BIA, I understand that. But the government's argument in the 28J letter seems to be, even now, there isn't any basis for assuming that you could be successful if there were a reopening of the case. In other words, they're saying that they can rebut the presumption now, if I can paraphrase what I understand their position to be. Well, and if there was to be a whole discussion about which would, this would get into the whole merits of the immigration judge's findings on Edwards' credibility, that there would have to be some sort of litigation on that. And if the court wanted to have supplemental briefing on that, I mean, definitely as a petitioner's counsel, I'd be amenable to that, so that can get a fuller briefing, and we can go ahead with that. But I also wanted to talk about something that was also raised in the, Ms. Lightbody's, answering brief, and that's the whole issue of the Akeemian. And in this case, Akeemian, or the Akeemian doesn't really apply. I would say that it has, in fact, in Akeemian itself, it talks about, so that in sui sponte requests, that there are really two aspects to a sui sponte request. In the, first is the request that the Board of Immigration Appeal invokes its sui sponte authority to reconsider or reopen a case that it had previously decided. And this is really to be seen, I think, in the context of the time and number limitations that have been imposed on motions to reopen in this attempt to override it. So then once you get by that initial gatekeeper time and number issue, then the board has, will find that it has the authority to consider the underlying motion. And I think that in Akeemian, what happened was, is that the, the, the board in that case just refused to invoke its sui sponte authority. And all it said is, is that the respondents through counsel have requested we open a proceeding sui sponte, we don't have sufficient grounds, end of matter, didn't discuss anything substantive. Whereas in this case, if referring to page seven of the administrative record, the board said as the respondents met the basic requirements under Lozano, we will adjudicate the respondent's motion in the exercise of our sui sponte consideration authority. And then goes on to do a whole discussion, as one would do for any motion reopened, in this case for adjustment under Velarde Pacheco, etc. And the language, and Akeemian specifically said that, the whole issue of invoking the request to invoke the sui sponte authority, there is no, is immune to review. However, they distinguish between that and the underlying request. So that, if I'm referring to 303 Fed 3rd at 1157 for Akeemian. It says that, they talk about the contrast. It says that those sentences specified if the parties to the case wish to ask the BIA to reopen a case, they must do so by a written motion. They also specify that the BIA's decision to grant or deny a party file motion is within the discretion of the BIA subject to the restrictions of the section. And that's in contrast to the initial request to even invoke the sui sponte authority. And when it refers to is within the discretion of the board subject to the restrictions of the section. Well, that whole section is about motions to reopen, which has a whole history of what equals abusing a discretion or not. So I would say that what the board dealt with in this case,  the authorities to exercise its discretion to take action. Well, now we're looking at the action that it decided to take for which there are standards and which Akeemian doesn't really deal with. I see I'm close. I'll let you say the remainder. Okay. Thank you. Extra. Miss Lightbody, it's your turn and your time will be running here. And I'll just give you a little heads up when it gets close to the end. Okay. Thank you, Your Honor. May it please the court. My name is Jennifer Lightbody, and I represent the respondent. The court lacks jurisdiction to review the denial of the motion to reopen because the board, exercising its sui sponte authority, declined to reopen the petitioner's case. In accordance with the court's decision in Akeemian, there's no jurisdiction to review a claim that the board should have exercised its sui sponte authority to reopen the proceedings. And there's no jurisdiction to review the decision itself. That's exactly what the court. But so far, that ignores the Singh decision. Under the Singh decision, we know that the 90-day period, which is the trouble in Akeemian, is told by ineffective assistance of counsel. And we have here a holding by the BIA that matter of lazada is satisfied. Therefore, we have ineffective assistance of counsel. So I don't even know that Akeemian's relevant. Well, Your Honor. I'm sorry. This is Judge Fletcher. I should have introduced the question with my name. Okay. Judge Fletcher, actually, the board had said that the petitioner had complied with the requirements in matter of lazada, but it didn't actually say that, in fact, he had ineffective assistance of counsel. What the board said was that the motion to reopen is untimely. And so that even if there was ineffective assistance of counsel, the petitioner still has a requirement that he act with due diligence. And he found out in the end of May about the board's decision, the fact that his prior attorney didn't file a brief and that it was denied because of that. He was given his file by, I believe it was Mr. Pilot, an associate of some sort with his original attorney's office. And so at that point, his tolling period had ended. And he didn't file a motion to reopen until December the 11th. That was well outside the 90-day period. And all of that had been sort of set forth on that. But when he was given the file, the period had already ended, correct? He was, no, he was given the file. He said at some time at the end of May of 2002, at the time he talked with Mr. Pilot. And the board had issued a decision, I believe it was in April the 4th, at the beginning of April. More than 30 days after that, he was given his file. He was told that the board had dismissed his appeal because no brief had been filed. And then, so sometime at the end of May, let's assume it's the last day in May, he still didn't file his motion to reopen until December the 11th. And so under any circumstances, his motion to reopen was untimely. And that's what the board said, your motion to reopen is untimely. And we recognize that you complied with the requirements as a matter of LAZADA. But, and we're going to exercise our sui sponte authority, but we decline to reopen your proceedings. And the court doesn't have jurisdiction then to review the decision itself to not reopen the proceedings. So let me see, this is Judge Graber again. Let me see if I understand your argument. I'm not sure whether I do. In so far as the request is to review the decision not to reopen sui sponte, you're saying we don't have jurisdiction over that. In so far as it's an argument that it is a situation in which he has requested reopening, we do have jurisdiction, but the decision was correct that it was untimely. Is that a parsing of what you said or am I missing something? With what, my position is that, and he asked to reopen his proceedings and the board said that that was untimely. And we have jurisdiction over that, but you're saying it's correct. That's right, your honor. The board implicitly declined to adopt or accept the petitioner's proposed cure for the untimeliness, meaning to reissue its April 4th decision. It declined to toll the time period for filing the motion to reopen. And it did recognize that the petitioner complied with the requirements of matter of lazada, but it didn't actually make a finding that he received ineffective assistance of counsel. And so implicitly in finding that the motion to reopen was untimely, implicit in that is the fact that the board did not accept any of those arguments. And then went on to say, okay, we recognize that you complied with matter of lazada. We're going to exercise our sua sponte authority to reopen, but we declined to reopen because we found that you didn't comply with the statutory requirements to reopen to adjust status. Let me ask you this, if I might. This is Judge Fletcher again. How long is a reasonable time to give someone to comply with matter of lazada once he learns that there is some possibility of ineffective assistance of counsel? I mean, the requirements of lazada are not something you can take care of over the weekend. Correct. Well, I think that would be up to the board to decide initially. But I believe that he's got that 90-day window in which to file his motion to reopen. But by the time he gets that file, some of that period is already gone. Right. And are you saying that no matter when he gets it, so long as he gets the file within the 90 days, he has only to the end of that 90-day period to file a motion, even if it's a motion premised upon ineffective assistance of counsel? Well, I believe that it would be up to the board to make that decision in the first instance, since that wasn't a decision that was reached necessarily in this particular case. But what I'm addressing is your point that you made fairly close to the beginning of your argument, that he did not act with due diligence once he got the file back because he got the file back in May and he doesn't file the motion to reopen after having complied with matter of lazada until December of that year. You're telling me that are telling us that that seven month or so period is not due diligence in complying with matter of lazada as a prerequisite for filing the motion to reopen? Well, and in fact, in this case, Your Honor, I believe, and I'd have to look in the record more carefully, but I believe that he didn't file anything with the California State Bar until sometime in September, or at least send a letter to his initial counsel until sometime in December. So we're looking at the end of May, June, July, August. You know, he's still outside of that 90-day window before he even attempted to comply with the requirements of matter of lazada. And I believe it was September. I could be mistaken. I can look in the record if you'd like me to do that. Or we can do that too. I'm sorry? Or we can do that too. Counsel, this is Judge Fogle. I guess what I'm hearing is that it's a 90-day window absent any ineffective assistance, absent any tolling. And from the time that the tolling necessarily would have ended when the petitioner found out what his true situation was, which would have been in May of 2002, and the motion isn't filed until December, is that essentially what you're saying? Not that there's a per se rule, but just that it would make no sense for it to be no longer than 90 days from the date of discovery of the fact that counsel hadn't filed the brief. Right. Under any circumstances, he's well outside of that 90-day period. And so he hasn't shown that he acted with due diligence. And in fact, in the motion to reopen, he becomes very, you know, they set forth specific dates about when, you know, the decision was issued, and then it becomes more and more vague with respect to what transpired between sort of the end of May, middle or end of May, and then to December the 11th. And when exactly current counsel met with the petitioner, other than it was outside of the 90-day window, and he wasn't referred to him until, you know, after that time. But we don't know what the petitioner was doing during that time. And he claims, well, I didn't know what I was supposed to do. But the board doesn't have any obligation to advise him that he needs to do something. He's given a file. He's told that his appeal has been dismissed. That's enough to put him on notice that he needs to do something. Counsel, this is Judge Graber again. In some cases, this is a completely different tack. I'm just going to ask you something completely different. One issue in this case is the adjustment of status related to the marriage. And in some cases involving marriages, there have been successful attempts to hold off a decision and to mediate or to take another look at the case. Is this case suitable for consideration of that avenue? And if not, why not? I don't believe that I would have to check with my client, but I don't believe that the client is willing to do that. There are other means which the petitioner could return to the United States, and that is that he would have to leave the United States and file for a visa to return to the United States, present himself to the consulate, and seek admission to the United States. And it's the government's position that that's what needs to be done in these cases. In other words, it's not the particular facts in this case, but when a petitioner is ordered removed and then marries four years later and never leaves the country, and then all of a sudden four years later resurfaces saying, I'm married, and now I want to adjust my status, the government's position is that that final order of removal required the alien to leave the country and then seek or use other means by which to return to the country to then become a lawful permanent resident. And that would be the government's position in this case as well. And in particular in this case, because under Achimian, because there's no jurisdiction to review the board's decision itself, that is to deny adjustment of status, that we would not be amenable to mediate this particular case. I understand your position. Do any of my, you're a couple of minutes over your time, or almost, but I want to be sure that my colleagues have had a chance to ask all their questions. Are there any further questions? Your Honor, can I just clarify a misstatement by Mr. Davis that I think that the court may not be clear about, and if I could just... Yes, finish your thought. The board on April the 4th issued a summary dismissal, and it did so because he failed to file a brief. And then sort of did a second statement saying that, you know, we've reviewed this case, and we find that there's, we agree with the immigration judge's decision. And so it really didn't decide that case on the merits. And that is set forth in the Singh case that I-28 Jade. I believe, Judge Fletcher, that you authored that opinion. And summary dismissal in 2002 wasn't permitted on the merits. I'm not sure if I'm explaining that, but if you take a look at the Singh case, it talks about the summary dismissal issue. And I just wanted to clarify that for the court so there's not a misunderstanding that it wasn't decided on the merits. Could you say that one more time to make sure that the clarification works, clarifies for me? I'm sorry. I understand what we wrote in Singh, and that is to say in Singh, the BIA had purported to issue a determination on the merits in a summary dismissal, but the regulations at the time did not permit the BIA to issue a summary disposition on the merits. I understand that. And so given that I understand that, then go ahead and say what you said because I'm not sure I caught it fully. And that decision applies in this case as well. The timeframe 2002 and the regulations in effect at the time are applicable to this case. And I believe Mr. Davis had suggested to this court that the original board decision was decided on the merits. So you're talking about administrative record 58, the summary dismissal should be treated the same as the summary dismissal in the same case. That is correct, Your Honor. Okay. I'm with you. So that April 4, 2002 date comes within that same period during which the BIA did not have power to issue determinations on the merits as a matter of summary dismissal. Okay. That takes us to the June 2003. Okay. I think we're with you. At least I think we understand your argument. Thank you very much. And, Mr. Davis, you have some rebuttal time, and we'll give you a little extra, too. Okay. Thank you. Okay. Just first of all, one thing. Yes, when I read the statement, we are not, page 58 of the record, we are not persuaded that the IJ's ultimate resolution of this case was narrow. And I guess I understood that to mean it was something on the merits. They tried to. And in saying this is boilerplate from that period. And in saying we said, well, you might have thought you were doing it, but you weren't because you couldn't. Okay. First of all, as far as that somehow the board implicitly declined or denied the other arguments I made, I think that there's been case law, and I did discuss that in the briefing, that the board at least has to make some sort of indication that it dealt with an issue and at least said something about it. And I know I'm just also referring more recently, and I know I did not submit this, Narayan v. Ashcroft, 384, Fed 3rd, 1065. And that also talks about part of an appeal where a motion remand issue was not even mentioned by the board. There has to be at least something there. Let me ask you this timing question. As I understand it, part of the government's argument is the following. Assuming that someone has demonstrated ineffective assistance, so they're entitled to tolling, there's still a 90-day window for filing a motion to reopen. And in this case, giving your client the benefit of the doubt, he learned in May sometime of the ineffective assistance. And so he would get three months from then. So maybe till the end of August. But he didn't do anything before the end of August. What's your response to that? That all the equitable tolling does is give him 90 days from a new date, but not give him more than 90 days. And I guess the issue there has to do with, you know, which date are we to? It's a battle over the dates. And I think that... Well, what's the date you would like us to count the 90 days from? It would probably be sometime, you know, in the... Once you pick a date, I'm going to ask you why you're picking it. So you might be thinking about that. I would say sometime in the end of September. So why doesn't he know before then that he's received ineffective assistance? Because I think to understand what... I mean, Mr. Teslamarian, after all, was not a lawyer. And he is still not. And so, at least in the declarations submitted, he just said, and I'm referring to page 39 of the record, says, Mr. Pilot gave me my file. He informed me the BIA had denied my case and that the reason for the denial was Aggerman did not respond to the board's briefing schedule and didn't submit a brief. But he was not told anything about appealing the board's decision or even to see another attorney. I mean, there are so many different things that go into a decision about what to do in the next step. When did he see another attorney? He... It just says that he was referred... He was referred by someone else to the present attorney, me.  And when did he walk into your office? You're asking. All I can say, I don't have independent recollection. It would probably have been sometime in September, which is when, you know, this... Does the record show? Well, let's see. The declaration in which he talks about this was page 40, September 30th of 2002. Let's see. Let me see. The... The page 34, the bar complaint was dated October 1st. So, you know, that's this thing there. But, you know, the... So I think that when you're talking about due diligence, it's a question is that, you know, it takes time to find attorneys and then you don't know everything and what the meaning of a certain thing is and when you're supposed to do things. So in this case, it's four months from the time that he learns... that he gets his file and finds out that his appeal's been dismissed and when he sees an attorney, so are we arbitrarily to say four months is reasonable but a year wouldn't have been or eight months wouldn't have been? But I don't think that you have to make that. I think the issue is when the person has knowledge. It's when the person has knowledge... I would have known because if we're... Nobody seems to be quarreling with the proposition that the board is entitled to have a 90-day rule from something and normally, in the normal course, it's 90 days from the original decision because they know about it and all of that. But if we're going to use equitable tolling, 90 days from what? I mean, if you were to go by... I'm saying when he actually knew. Again, yes, he knew that why the board had denied the appeal or dismissed the appeal but then there are other steps. The attorney, Mr. Pilot, has no indication that he had told him, okay, now you have to do something within 30 days. That's something he's not necessarily going to know. Mr. Davis, here's what I'm struggling with. Let's say that we have a pro se litigant who's not familiar with the legal procedure and so on and he finds out that essentially he's been defaulted in his BIA appeal but what you're asking us to conclude is, well, he didn't know what that meant. He didn't know what rights he had lost and so forth and thus he couldn't have been expected to assert them and it happened in this case to take him four months to get that information when he saw you. What if it had taken him a year? It puts it in the control of the petitioner to say, well, I actually found out what was what at this particular point in time and the whole point of a level limitations period is to say once you are objectively on notice of the facts that would be a predicate for a claim you have to do something within that limitations period. So what I'm hearing from you maybe I don't want to be unfair to you, but what I'm hearing from you is if he had come to you two months later or if he had come to you a year later and then he submitted an affidavit and said, well, the first time I realized that I could make a motion to reopen was when I talked to Mr. Davis in January of 2005 would you still have the same equitable tolling argument? And if the answer is no, then where's the line? It depends on the circumstances. I think that you have to look at the circumstances. I mean, in a case like Sokol, I mean, you're looking at the circumstances. And again, I just want to emphasize that, again, the board had no problem with this, with ineffective assistance, the prejudice, the whole thing, and it was not raised and really litigated before the BIA. Except they said he wasn't diligent. That's why they didn't. The board didn't. The board went with Lozada and decided that for purposes of sua sponte that these were exceptional circumstances such that they would even invoke their sua sponte powers. And just another thing here is that, you know, and the board does know how to say that a person does not comply with Lozada. I've seen these in, you know, in other things. And then just finally... Here's what troubles me. Well, this is a complicated case that falls in between, if this is even metaphorically possible, falls in between several cracks. One of the things that bothers me about this case is that one possible way of reading what the board did in saying we exercise our sua sponte authority is to say well, the board in characterizing what it's doing is trying to bring itself under a Kimian so as to make whatever it does unreviewable. Well, that doesn't strike me as a very useful way to read a Kimian, which I'm afraid I'm the sinner here on a couple of cases. I wrote a Kimian as well as saying, as you probably know. Well, you'll get your chance to clarify for all of us. But it seems to me that there's something wrong with that reading of a Kimian if simply saying we're doing a sua sponte rather than doing it on some other basis that means you can't review us. There were other bases in which to go on. There were a number of different possibilities and the board hung on to one. But again, I would also say even if it's applying a Kimian I think, and I just wanted to go back to the part of a sua sponte decision that is not reviewable that a Kimian talks about and the part that it doesn't talk about, which is the underlying action. No, that was an interesting point. Another question I have and it goes back to the tolling question the government would like to say, at least I think I heard the government saying that, well, there's going to be a 90-day period and it's going to run from somewhere. Well, there is a 90-day period during which this is not a sua sponte motion, rather it is a motion to reopen. But the question is not so much when does the 90-day period begin to run from. We know when it begins to run from. It begins to run from the date of the final decision. The question is how long does the tolling period interrupt that 90 days? And you're, I think, arguing that well, it should be interrupted from the time he learned until the time of filing in December because it's not unreasonable for him to have taken four months to come to you roughly, wherever it is. And it appears that once he came to you, you acted pretty promptly. I'm assuming that he came to you, I'll give the government the benefit of the doubt in the beginning of September or the end of August. Well, by the end of September, you're moving along where you've got a bar complaint filed by the first of October and so on. And just as part of the reality of things these things take time. And you know what I'm saying is that even though I just want to point out that in looking at the board's decision it says the respondent has filed an untimely motion to reopen. I mean, that kind of begs the question It's true. I mean, just when you're looking from, defining from the point of view of the date of the final decision, yes, it was untimely. But then there's a whole slew of case law in which you're talking about when we're going to toll that time for, you know, the running of time to begin. And I just wanted to say one other thing Okay, you've well exceeded your time, so if you could wrap up, I'd appreciate it Can I just, just with regard, if Mr. Tesfamarian leaves the United States to do consulate processing he has a 10-year bar. And he's going to have to show at the at the embassy in Osmara, whichever country that it would be an extreme hardship to his wife if he doesn't get back in. And again, Realia, it's not the easiest thing to show, and it's not a slam dunk by any means Anyway, I admit to the point. Thank you, counsel. The case just argued is submitted. We appreciate the arguments of both of you. And again, Ms. Lightbody, we particularly appreciate the government's flexibility in the time and manner of presenting the argument. The arguments on both sides have been very helpful. And with that, we are adjourned for today Thank you
judges: Graber, W. Fletcher, Fogel